**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>AHMAAD UNIQUE MATTOCKS,<br><br>*Defendant*. | Criminal Action No. 22-cr-226 (RDM) |

## MEMORANDUM OPINION AND ORDER

On October 26, 2022, the Pretrial Services Agency ("PSA") filed the Pretrial Violation Report currently before the Court.  Dkt. 22.  The Court held a pretrial detention hearing on October 31, 2022.  After considering the parties' arguments and evidence, the Court determines that an order of revocation and detention is necessary under 18 U.S.C. § 3148(b) and § 3142.

### I. BACKGROUND

The government alleges that on May 29, 2022, Ahmaad Unique Mattocks, "knowing [that] he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in the Superior Court for the District of Columbia . . . did unlawfully and knowingly receive and possess a firearm," a .380 caliber semi-automatic firearm and .380 caliber ammunition, in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).  Dkt. 1 at 1.  On the Government's oral motion, Mattocks was placed in the High Intensity Supervision Program on home incarceration at his initial appearance.  Min. Entry (06/24/2022).  Then, on July 24, 2022, on Mattocks' motion, the Court modified Mattocks' conditions of release, permitting him "to leave him home for the purpose of obtaining employment and working, subject to *prior* notification and approval from Pretrial Services."  Min. Order (07/24/2022) (emphasis added).

On August 3, 2022, PSA filed a Pretrial Violation Report, noting that Mattocks was rearrested for driving without a license, but no further action was recommended. Dkt. 11. On October 23, 2022, Mattocks moved further to modify his conditions of release, asking that he "be stepped down to either [personal recognizance] or GPS monitoring without home confinement." Dkt. 19 at 2.

On October 26, 2022, PSA filed another Pretrial Violation Report. Dkt. 22. This time, PSA represented that, according to GPS monitoring, Mattocks left his home on five separate occasions without prior authorization: (1) on October 20, 2022, Mattocks was gone between 6:40 a.m. and 7:33 a.m.; (2) on October 21, 2022, he left between 10:57 p.m. and 11:05 p.m.; (3) on October 22, 2022, he left at 12:50 p.m. and returned at 1:09 p.m.; (3) he left again on October 21, this time from 8:14 p.m. to 9:38 p.m.; and (5) on October 24, 2022, he was gone from 6:05 a.m. to 8:02 a.m. *Id.* at 3. Mattocks "indicated his water was turned off; therefore, he had to leave his residence to take care of his grooming needs." *Id.* Based on these violations, PSA recommended removal from the High Intensity Supervision Program. *Id.* at 3.

The Court held a pretrial detention hearing on October 31, 2022. Min. Entry (10/31/2022). At the hearing, Shay Holman from PSA represented that Mattocks violated a sixth time: On October 24, 2022, Mattocks left his home at 11:39 a.m. and returned at 3:05 p.m. *See* Oct. 31, 2022 Hearing Tr. at 1-2. And during that time, he was around 1531 U Street, SE, near the site of his arrest in this matter. *Id.* at 2. At the hearing, the Government requested that Mattocks be stepped back and subject to pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E). *Id.* at 3. Mattocks opposed detention, arguing that the violations started when his water was turned off and that he left his home for personal hygiene reasons. *Id.* at 12. Mattocks offered that explanation for several of the violations, including the roughly hour and twenty-minute

2

violation on October 22, during which he purportedly went to the apartment of a female friend to clean up. *Id.* at 18-19.

As to the over three-hour violation on October 24, Mattocks maintained that he was meeting with his mentor, Keith Johnson. *Id.* at 13-14.   The Court requested that Mr. Johnson appear at the ongoing hearing telephonically, and the parties agreed to this procedure. *Id.* at 17. Mr. Johnson testified that he knows Mattocks through the Father Factor program. *Id.* at 20-21. Johnson confirmed that he did in fact meet with Mattocks on October 24 around noon, but for "maybe 20, 30 minutes." *Id.* at 23-24; *see also id.* at 28 ("it was 30 minutes if it was more than 30 minutes it would have had to be five or 10 minutes" more).   The Court then reviewed the GPS tracking records and determined that it appeared Mattocks was "on U Street or near U Street from about 11:52 to 2:30 or so . . . in excess of two and a half hours for a half an hour meeting." *Id.* at 41.   Mattocks explained to the Court that he met with Johnson for about 30 to 40 minutes, but he failed to offer a credible explanation for the majority of the time he was at the U Street area. *See id.* at 42.   And as to the October 22 violation for an hour and twenty minutes, Mattocks explained that went to a friend's house to shower. *Id.* at 42-43.   At the hearing, Mattocks withdrew his motion at Docket 19 to reduce the conditions of release. *Id.* at 45.

At the conclusion of the hearing, the Court ordered Mattocks held pending trial. *Id.*   The Court noted that it was a close call as to whether Mattocks should have been held pending trial at the outset of this case, given that Mattocks not only had a prior gun conviction, but apparently "was involved in a gun battle on open streets," *id.*, and had a prior conviction for tampering with a GPS device, Dkt. 23 at 5.   The Court was not "terribly troubled by the short visits—short periods of leaving his home for purposes of hygiene and grooming," which was "understandable under the circumstances." *Id.* at 46.   But what most concerned the Court was "the hour and 24

minutes on October 22nd," and, even more so, "what happened on the 24th where it does appear that Mr. Mattocks was for a substantial period of time in the same area where the prior crimes had been committed." *Id.*  The Court thus concluded that "no conditions of release will assure the safety of the community" and "order[ed] that [Mattocks] be detained pending trial." *Id.* at 46-47.

Below, the Court sets out the written findings and reasons underlying its Order. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention").

## II. LEGAL STANDARD

"A person who has been released under section 3142 of this title, and who has violated a condition of his release is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a).  A "judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

(1) finds that there is—

    (A)  probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

    (B)  clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that—

    (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

    (B) the person is unlikely to abide by any condition or combination of conditions of release."

*Id.* at § 3148(b).

Under the Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."[1]  18 U.S.C. § 3142(e)(1); *see also id.* § 3142(f)(1)(E) ("The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community— (E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm . . . .").  The Government bears the burden of proving "by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person."  *United States v. Salerno*, 481 U.S. 739, 750 (1987).  "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  In determining whether Mattocks should be detained, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

---

[1]  Because the Court concludes that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community," the Court need not consider whether Mattocks poses a flight risk under 18 U.S.C. § 3142.

## III. ANALYSIS

### A.      Violation of Release Conditions

First, pursuant to 18 U.S.C. § 3148(b)(1)(B), the Court finds that there is "clear and convincing evidence that [Mattocks] has violated [his] condition[s] of release." The Court finds at least two significant violations: (1) On October 22, 2022, Mattocks left his home (for the second time that day) from 8:14 p.m. until 9:38 p.m., Dkt. 22 at 3; and (2) on October 24, 2022, he left his home at 11:39 a.m., went to the U Street SE area and did not return until 3:05 p.m., Oct. 31, 2022 Hearing Tr. at 2. Mattocks admitted to the October 24 violation, stating that he "t[ook] full responsibility for being on U Street longer than what I was supposed to," which "wasn't approved by [his] pretrial" officer. *Id.* at 42. Although he explained that he met with Johnson to discuss obtaining work, the Court finds that conversation lasted only about thirty minutes, leaving a significant period of unaccounted time. And, as to the October 22 violation, Mattocks admitted that he was at a friend's house for a significant period, for longer than necessary to shower. *See id.* Thus, even putting aside the fact that Mattocks was not permitted to leave his residence *at all without prior authorization*, he repeatedly and knowingly left his home for periods longer than necessary to look for work or to attend to his personal hygiene needs. Accordingly, there is no dispute that Mattocks violated his conditions of release pursuant to 18 U.S.C. § 3148(b)(1)(B).

### B.      Section 3142(g) Factors

The Court therefore goes on to evaluate whether, "based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure

that the person will not flee or pose a danger to the safety of any other person or the community."

18 U.S.C. § 3148(b)(2).

1.  *Nature and circumstances of the offense*

The first § 3142(g) factor—the nature and circumstances of Mattocks' alleged offense—

weighs in favor of detention.  The government's factual proffer indicates that Mattocks illegally

possessed a loaded semi-automatic weapon while on D.C.'s public streets.  Dkt. 1 at 1.

According to the government, Mattocks was "sitting in a . . . foldable camping chair on the

sidewalk of 16th and U Street SE with about five or six adult males standing around him," while

smoking marijuana.  Oct. 31, 2022 Hearing Tr. at 4.  When officers stood Mattocks up, they

found a loaded pistol in the front of his waistband, as well as an unloaded extended magazine

that was not the same caliber as the loaded firearm.  *Id.* at 4-5.

"This Court agrees with other courts in this district that unlawfully carrying a concealed

or loaded firearm in public poses a risk of danger to the public."  *United States v. Gassaway*, No.

1:21-CR-550-RCL, 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases); *see also*

*United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) ("carrying a loaded firearm—

especially if the carrier has a violent history . . . has the great potential to escalate into violence").

The seriousness of this offense is amplified by the facts that Mattocks possessed the firearm near

several other individuals in the same area where he apparently engaged in a gun battle that led to

his prior conviction for possession of a firearm without a license.  *See* Dkt. 23 at 4; Dkt. 24-1 at

1-5; Oct. 31, 2022 Hearing Tr. at 6-8.

2.  *Weight of evidence against the defendant*

The second factor—the weight of evidence against the defendant—also weighs in favor

of detention.  During the pretrial detention hearing, the government explained that there is body-

worn camera footage showing Mattocks with the loaded pistol sticking out of the waistband and an extended firearm magazine in the front pocket of his jeans.  Oct. 31, 2022 Hearing Tr. at 4-5. And, because there is a forfeiture allegation, the government presumably recovered the firearms. Dkt. 1 at 2 (Forfeiture Allegation).  The weight of the evidence, accordingly, is strong.

  3. *History and characteristics of the defendant*

  The third factor—the history and characteristics of the defendant—poses a somewhat closer question.  In considering Mattocks' history and characteristics, the Court must "take into account the available information concerning" Mattocks' "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  18 U.S.C. § 3142(g)(3)(A).

  In his now-withdrawn motion, Mattocks stated that, at least until the violations at issue here, he had "been in complete compliance with his release conditions[,] completed and graduated from Project Empowerment[,] successfully completed Career Connections and received a certificate for Completing the Job Readiness Training Program[,] secured two jobs[, and] is a dedicated full time father of a three year old girl."  Dkt. 19 at 2.  The fact that Mattocks was living with his mother, Oct. 31, 2022 Hearing Tr. at 12, and has some community ties, as evidenced by his mentor/mentee relationship with Mr. Johnson, weigh in favor of pretrial release.  The Court also recognizes that Mattocks is young—only 22 years old—and that he left his residence, in part, because the water company had turned off his water, and he needed to shower.

  On the other hand, however, Mattocks has a history of some extremely concerning criminal conduct.  Most notably, in March 2019, he was arrested for carrying a pistol without a

license outside the home in violation of D.C. law.  Dkt. 23 at 4.  Although Mattocks pleaded

guilty to a possessory offense, in the Affidavit in Support of an Arrest Warrant in that case, the

affiant attested that Mattocks was involved in a shootout on a public street corner near an

elementary school.  Dkt. 24-1 at 1-5; Dkt. 24-3 at 1.  Given that this is Mattocks' second gun

related case—and that the first apparently involved gun violence near a school with a significant

risk of injury to other persons—the Court finds that Mattocks' overall history and characteristics

weigh in favor of detention.

       4.   *Danger to the community*

Next, the Court considers "the nature and seriousness of the danger to any person or the

community that would be posed by [his] release."  § 3142(g)(4).  As explained above, Mattocks

is alleged to have unlawfully possessed a concealed, loaded firearm in a public place.  He

allegedly did so, moreover, in the same portion of the city where he apparently engaged in a

shootout in 2019.  Such behavior evidences a clear disregard for human life and safety.  *See*

*Gassaway*, 2021 WL 4206616, at *5.

Notably, the Court gave Mattocks the opportunity to demonstrate that he could be trusted

while on home incarceration pending trial, but Mattocks knowingly and repeatedly violated the

conditions of his release.  Even while on home incarceration, he managed to return to the area in

which he allegedly possessed a firearm.  Given Mattocks' repeated firearm violations, apparent

involvement in a public shootout, and unwillingness to comply with court orders regarding his

conditions of release, the Court finds that he poses a danger to the community.  This factor,

accordingly, weighs in favor of incarceration.

In sum, based on the § 3142(g) factors, the Court finds by clear and convincing evidence that "there is no condition or combination of conditions of release that will assure that" Mattocks will not "pose a danger to the safety of any other person or the community."  § 3148(b)(2)(A).

**C.     Whether Mattocks Would Abide by Conditions of Release.**

Even if the § 3142(g) factors did not weigh in favor of detention, the Court finds that Mattocks is "unlikely to abide by any condition of combination of conditions of release." § 3148(b)(2)(B).  As explained, Mattocks violated the conditions of his release six times over just four days, including two significant violations.  And this was while Mattocks was on one of the most restrictive forms of pretrial release:  High Intensity Supervision with home incarceration.  Given this conduct, the Court finds Mattocks is unlikely to follow any combination of pretrial release conditions.

Because there is "clear and convincing evidence that" Mattocks violated conditions of his release, and because, based on the factors in § 3142(g), there is no combination of conditions of release that will assure that Mattocks does not pose a danger to the safety of the community— and because it is unlikely that Mattocks would abide by any such conditions of release in any event—the Court finds that § 3148(b) requires revocation of release pending trial.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that AHMAAD UNIQUE MATTOCKS shall be detained pending trial.  Pursuant to 18 U.S.C. § 3142(i), Mattocks is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; he shall be afforded reasonable opportunity for private consultation with counsel; and on order of a court of the United States or on request of an attorney for the

government, the person in charge of the corrections facility in which Mattocks is confined shall deliver him to a United States marshal for the purpose of an appearance in connection with a court proceeding.

      **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 2, 2022